IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SHANE IOANE, on behalf of himself and all others similarly situated,<br><br>                Plaintiff,<br><br>    vs.<br><br>MRS BPO, LLC a/k/a MRS ASSOCIATES OF NEW JERSEY,<br><br>                Defendant. | CIVIL NO. 20-00040 JAO-WRP<br><br>**ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION** |

**ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION**

Plaintiff Shane Ioane ("Plaintiff") brings this action against Defendant MRS BPO, LLC ("Defendant") alleging that Defendant violated the Telephone Consumer Protection Act ("TCPA") and the Fair Debt Collection Practices Act ("FDCPA") by sending him various text messages in connection with a debt he allegedly owed. Defendant moves to compel arbitration and stay the case pending arbitration. *See* ECF No. 30. For the reasons stated below, Defendant's Motion to Compel is DENIED.

### I.    BACKGROUND

**A.    Facts**

In 2016, Plaintiff opened an account with Verizon Wireless and, in

connection with doing so, signed a Receipt of Transaction.  *See* ECF No. 30-3 (Wooley Decl.) ¶¶ 3–4; ECF No. 30-5.  The Receipt of Transaction contains a section labeled "Agreements (View full agreement at vzw.com/myverizon)" with a subsection entitled "Customer agreement" that provides:  "I agree to the Verizon Wireless Customer Agreement including, settlement of disputes by arbitration instead of jury trial[.]"  *See* ECF No. 30-5 at 3.  Defendant attests that a true and correct copy of the relevant Customer Agreement (referenced in Plaintiff's Receipt of Transaction as available at the website listed above) contains the following arbitration clause:

> How do I resolve disputes with Verizon Wireless?
> **WE HOPE TO MAKE YOU A HAPPY CUSTOMER, BUT IF THERE'S AN ISSUE THAT NEEDS TO BE RESOLVED, THIS SECTION OUTLINES WHAT'S EXPECTED OF BOTH OF US.**
>
> **YOU AND VERIZON WIRELESS BOTH AGREE TO RESOLVE DISPUTES ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT.  YOU UNDERSTAND THAT BY THIS AGREEMENT YOU ARE GIVING UP THE RIGHT TO BRING A CLAIM IN COURT OR IN FRONT OF A JURY. . . . WE ALSO BOTH AGREE THAT:**
>
> (1) THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT.  EXCEPT FOR SMALL CLAIMS COURT CASES THAT QUALIFY, ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT OR FROM ANY EQUIPMENT, PRODUCTS AND SERVICES YOU RECEIVE FROM US (OR FROM ANY ADVERTISING FOR ANY SUCH PRODUCTS OR SERVICES), INCLUDING ANY DISPUTES YOU HAVE WITH OUR EMPLOYEES OR AGENTS, WILL BE

> RESOLVED BY ONE OR MORE NEUTRAL ARBITRATORS
> BEFORE THE AMERICAN ARBITRATION ASSOCIATION
> ("AAA") OR BETTER BUSINESS BUREAU ("BBB").

ECF No. 30-6 at 12; *see also* ECF No. 30-3 ¶ 5.  That version of the Customer Agreement also provides:

> You consent to allow Verizon Wireless and anyone who collects on our behalf to contact you about your account status, including past due or current charges, using prerecorded calls, email and calls or messages delivered by an automatic telephone dialing system to any wireless phone number or email address you provide.

ECF No. 30-6 at 4.

In 2019, Verizon placed Plaintiff's past due account with Defendant and Defendant attempted to collect Plaintiff's debt on Verizon's behalf.  *See* ECF No. 30-3 ¶ 6; ECF No. 30-4 (Perkins Decl.) ¶¶ 4–5.  According to the allegations in Plaintiff's Complaint (which make no reference to the Receipt of Transaction or Customer Agreement), Defendant sent text messages to Plaintiff without his prior express consent on five occasions.  ECF No. 1 ("Compl.") ¶¶ 17, 19.  The text messages asked Plaintiff to contact Defendant "regarding a Verizon Wireless matter," indicated they were an "attempt to collect a debt," and identified Defendant as a debt collector.  *See id.* ¶ 18.  Plaintiff contends these text messages constitute violations of the TCPA because Defendant used an automatic telephone dialing system within the meaning of the TCPA to send generic, impersonal text messages aimed

at a mass audience without Plaintiff's prior express consent. *See id.* ¶¶ 19–20. Plaintiff further contends that, although Defendant communicated with him at least five times, he never received a notice of his right to dispute the debt, in violation of the FDCPA. *See id.* ¶ 21. Plaintiff claims that Defendant engaged in similar conduct in violation of these federal statutes with regard to thousands of other persons, and thus also seeks to bring these claims on a classwide basis. *See id.* ¶¶ 24–25.

**B.     Procedural History**

Plaintiff filed a Class Action Complaint against Defendant bringing the following claims: First Cause of Action—violation of the TCPA; Second Cause of Action—violation of the FDCPA. *See* ECF No. 1. Defendant filed a Motion to Compel Arbitration and stay the case pending arbitration, which Plaintiff opposes. *See* ECF Nos. 30, 34, 35.

## II.     DISCUSSION

Under the Federal Arbitration Act ("FAA"), a district court considering a motion to compel must consider (1) whether a valid agreement to arbitrate exists and, if so, (2) whether that agreement encompasses the dispute. *See Munro v. Univ. of S. Calif.*, 896 F.3d 1088, 1091 (9th Cir. 2018). The party seeking to compel arbitration bears the initial burden of establishing that an agreement to arbitrate exists between the parties. *See Siopes v. Kaiser Found. Health Plan, Inc.*,

130 Hawaiʻi 437, 446, 312 P.3d 869, 878 (2013), *as corrected* (Sept. 26, 2013); *see also Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) (noting state contract law controls whether parties agreed to arbitrate and, citing California law, stating that party seeking to compel arbitration bears burden of proving existence of agreement to arbitrate). Although the parties dispute whether the Customer Agreement constitutes a valid, enforceable agreement between Plaintiff and Verizon, there is no dispute that Defendant is not a party to that Customer Agreement, which contains the arbitration clause at issue. A foundational question, then, is whether Defendant has standing to enforce the arbitration clause against Plaintiff despite its status as a nonsignatory.

"Generally, the contractual right to compel arbitration 'may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration.'" *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013) (quoting *Britton v. Co-op Banking Grp.*, 4 F.3d 742, 744 (9th Cir. 1993)). However, the "Supreme Court has held that a litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *Id.* at 1128 (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009)). The Court therefore looks to Hawaiʻi law to determine whether Defendant, as a nonsignatory, can compel arbitration. And, although generally, "as a matter of federal law, any

doubts concerning the *scope of arbitrable issues* should be resolved in favor of arbitration," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) (emphasis added) (footnote omitted), "[t]he question here is not whether a particular issue is arbitrable, but whether a particular *party* is bound by the arbitration agreement. Under these circumstances, the liberal federal policy regarding the scope of arbitrable issues is inapposite," *Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir. 2006) (citation omitted).

Under Hawai'i law:

> a nonsignatory agent has standing to invoke an arbitration agreement if one of the following two conditions is met:
>
> > First, when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. Second, when the signatory to the contract containing a arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.

*Luke v. Gentry Realty, Ltd.*, 105 Hawai'i 241, 248, 96 P.3d 261, 268 (2004) (citation omitted).[1] Defendant argues only the first condition here, contending that Plaintiff's claims rely on the terms of the Customer Agreement because an

---

[1] The same test appears to apply even if the nonsignatory is *not* an agent of a signatory. *See Luke*, 105 Hawai'i at 248, 96 P.3d at 268 (citing *Westmoreland v. Sadoux*, 299 F.3d 462, 467 (5th Cir. 2002), which noted that the same framework applied whether or not the nonsignatory was an agent).

essential element of Plaintiff's TCPA claim is a lack of prior express consent to Defendant's messages, but the Customer Agreement provides that anyone who collects on Verizon's behalf may contact Plaintiff about his account status. *See* ECF No. 30-1 at 14–15; ECF No. 35 at 14.  Aside from failing to address how Plaintiff's *FDCPA* claim relies on the terms of the Customer Agreement, Defendant's argument regarding the TCPA misses the mark.

For a TCPA claim, "[e]xpress consent is not an element of a plaintiff's prima facie case but is an affirmative defense for which the defendant bears the burden of proof."  *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017) (footnote and citations omitted); *see also id.* at 1044 n.3 ("We think it plain from the statutory language that prior express consent is an affirmative defense, not an element of a TCPA claim[.]").  For this reason, at least one Ninth Circuit panel concluded that a plaintiff's TCPA claim against a nonsignatory did not rely on an agreement with his cellphone provider—even if the nonsignatory's affirmative defense of express consent might require the district court to analyze that agreement.  *See Rahmany v. T-Mobile USA Inc.*, 717 F. App'x 752, 753 (9th Cir. 2018) ("Although [plaintiff's] complaint alleges that he did not provide 'prior express written consent' to receive the text messages at issue, such an allegation does not constitute a 'claim of [a] violation' of the Wireless Agreement.  The TCPA, not the Wireless Agreement, creates and defines any alleged duty to refrain

from sending an unwanted text message." (citation omitted));[2] *see also Hansen v. Rock Holdings, Inc.*, 434 F. Supp. 3d 818, 827 (E.D. Cal. 2020) ("[Plaintiff's] TCPA claims do not assert a violation of the Terms of Use, and therefore equitable estoppel does not apply. The fact that the Terms of Use appear to authorize the text messages in question does not change this conclusion." (citation omitted)); *cf. A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1064–65 (7th Cir. 2018) (holding credit card company could not compel daughter of cardholder to arbitrate TCPA claim; even if there was a question over whether cardholder's consent could be imputed to daughter, the TCPA claim was not premised on the cardholder agreement because consent was an affirmative defense rather than part of daughter's case, which asserted no rights under the cardholder agreement and was instead based on a separate statute protecting her from harassing phone calls).

---

[2] Defendant argues *Rahmany* is distinguishable because Plaintiff's consent to Defendant's contact will be at issue here. *See* ECF No. 35 at 12 & n.2. However, it was also at issue in *Rahmany*. *See* 717 F. App'x at 753 (noting "Subway's affirmative defense of express consent may require the district court to analyze the Wireless Agreement"). Defendant also *presumes Rahmany* is distinguishable because, there, the defendant (Subway) solicited the plaintiff for its own marketing purpose unrelated to the plaintiff's wireless carrier, in contrast to Defendant's purpose here of contacting Plaintiff on behalf of Verizon as permitted under the Customer Agreement. *See* ECF No. 35 at 12–13. This repackages Defendant's argument as: *its* assertion that the terms of the Customer Agreement places consent at issue somehow means *Plaintiff*'s TCPA claim relies on that agreement. Moreover, Defendant cites no case to support the argument that the type of nonsignatory defendant and its purpose for contacting a plaintiff should govern the analysis of whether a TCPA claim relies on a wireless agreement.

More generally, in applying state law analogous to Hawaiʻi law—where a nonsignatory may compel arbitration under a theory of equitable estoppel because the plaintiff's claims rely on the terms of the agreement—the Ninth Circuit has concluded that claims akin to Plaintiff's here do *not* rely on the terms of the agreement, such that the nonsignatory may *not* compel arbitration on that basis. *See In re Henson*, 869 F.3d 1052, 1060–61 (9th Cir. 2017) (noting that merely referencing an agreement is insufficient and that for claims to rely on the terms of an agreement, they must be based on obligations imposed by that agreement; estoppel is thus inapplicable where a plaintiff's allegations reveal no claim of any violation of any duty, obligation, term, or condition imposed by the agreement nor seek any benefit from the terms of the agreement); *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847–48 (9th Cir. 2013) (holding plaintiff was not equitably estopped from avoiding arbitration because he did not contend any party breached the agreement or seek to enforce the agreement, and instead his statutory claims were separate from the agreement); *Kramer*, 705 F.3d at 1129–32 (rejecting argument that plaintiffs' claims were based on a purchase agreement merely because suit was predicated on fact that a purchase occurred; holding that claims against car manufacturer under consumer-protection and unfair-competition statutes did not rely on and were not "intimately founded in" the underlying contract with car dealership); *cf. Namisnak v. Uber Techs., Inc.*, -- F.3d -- , 2020

9

WL 4930650, at *5 (9th Cir. Aug. 24, 2020) (holding plaintiffs' ADA claims did not "rely on" Uber's terms and conditions because none of those terms or conditions were mentioned in the operative complaint, Uber pointed only to the arbitration clause, and plaintiff's ADA claims were fully viable without any reference to the terms and conditions).

Here, Plaintiff's TCPA and FDCPA claims rely on and are founded in federal consumer protection statutes, not his Customer Agreement with Verizon. The allegations in the Complaint object to receiving text messages from Defendant and not receiving information regarding how to dispute an alleged debt; they do not reference any term of the Customer Agreement, allege any violation of it, or seek to enforce or benefit from any of its terms.  *See Sher v. Cella*, 114 Hawaiʻi 263, 268, 160 P.3d 1250, 1255 (App. 2007) (noting nonsignatory can invoke arbitration clause where plaintiff is "using the contract as a weapon against the non-signatory in a manner that gives the non-signatory standing to invoke other terms in that contract").  Defendant thus has not shown that Plaintiff must rely on the terms of the Customer Agreement in asserting his claims against Defendant.

As Plaintiff notes, district courts outside the Ninth Circuit have similarly held that TCPA and FDCPA claims do not rely on the terms of a written agreement even if the claims presume the existence of such an agreement, such as for the purpose of noting the existence of a debt.  *See Pacanowski v. Alltran Fin., LLP*,

10

271 F. Supp. 3d 738, 748–49 (M.D. Pa. 2017); *Alderman v. GC Servs. Ltd. P'ship*, No. 2:16-CV-14508-ROSENBERG/MAYNARD, 2017 WL 6371325, at *1 (S.D. Fla. Dec. 13, 2017); *Pagan v. Integrity Sol. Servs., Inc.*, 42 F. Supp. 3d 932, 935 (E.D. Wis. 2014); *Mims v. Glob. Credit & Collection Corp.*, 803 F. Supp. 2d 1349, 1357–58 (S.D. Fla. 2011).  In fact, Defendant cites no case where a court compelled a plaintiff to arbitrate TCPA or FDCPA claims against a nonsignatory after concluding that the claims relied on the terms of an agreement.

Instead, most of the cases Defendant cites in favor of compelling arbitration involved suits against Verizon, i.e., a party to the contract, and addressed whether statutory claims fell within the *scope* of an arbitration clause—rather than whether a nonsignatory had *standing* to compel arbitration.  *See* ECF No. 30-1 at 13.  *Bailey v. Diversified Consultants Inc.*, 444 F. Supp. 3d 1330, 1336 (N.D. Ala. 2020), the only instance Defendant raises where a court allowed a nonsignatory debt collector to compel arbitration against a Verizon customer, is distinguishable because Defendant cites it for the proposition that a nonsignatory "acting on behalf of" a signatory is "permitted to compel arbitration."  ECF No. 30-1 at 13.  But under Hawaiʻi law, "[a] nonsignatory may not invoke an arbitration clause *merely because of its status as an agent of one of the signatories*."  *Luke*, 105 Hawaiʻi at 248, 96 P.3d at 268 (emphasis added).  Instead, a nonsignatory agent may invoke the arbitration clause only if the claims against him are dependent on the

11

agreement in which the arbitration clause appears—which Defendant has not shown here. *See id.* (citing *Westmoreland*, 299 F.3d at 467 ("If [a signatory's agent] seeks to compel arbitration, he is subject to the same equitable estoppel framework left to other nonsignatories."))._3_

For these reasons, the Court concludes that Defendant's Motion must be denied, and the Court therefore need not address Plaintiff's other arguments.

//

//

//

//

---

[3] Moreover, *Bailey*'s cursory discussion of why a nonsignatory debt collector had standing to compel arbitration relied *both* on language in the relevant agreement explicitly identifying "agents" as third-party beneficiaries *and* the fact that the plaintiff there *did not* dispute that the debt collector was an agent. *See* 444 F. Supp. 3d at 1335. Here, Defendant argued for the first time in its Reply that it can enforce the arbitration clause because it is a third-party beneficiary of the Customer Agreement, so the Court need not consider this argument. *See* LR 7.2 ("Any argument raised for the first time in the reply *shall* be disregarded." (emphasis added)). In addition, Plaintiff *does dispute* that Defendant is Verizon's agent under Hawai'i law. *See* ECF No. 34 at 17–18. Defendant has not offered any argument or pointed to any evidence as to why, for purposes of this Motion, the Court should consider it an "agent" within the meaning of Hawai'i law or under the Customer Agreement. *See* ECF No. 30-1 at 13 (citing *Bailey* and arguing it was "acting on behalf of Verizon" in the context of discussing the *scope* of the arbitration clause without articulating how this means it was Verizon's agent for purposes of *standing* to enforce that clause); *see also* ECF No. 35 at 11 (citing *Bailey* in the context of discussing the *scope* of the arbitration clause; nowhere addressing why *Bailey*—or any other authority or evidence—supports its *standing* to compel arbitration as a nonsignatory or why it is an "agent").

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Arbitration is DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaiʻi, September 4, 2020.



Jill A. Otake
United States District Judge

Civil No. 20-00040 JAO-WRP, *Ioane v. MRS BPO LLC*; ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION